UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

PAUL DANIELS,

     Plaintiff,

vs.

MARTIN CROTTY, HARRISON
MACRIS,  BRADLEY WERNTZ,
PRINCETON CARBON WORKS
INC., a Florida corporation, and
PRINCETON CARBONWORKS,
INC., a Delaware corporation,

     Defendants.

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiff, Paul Daniels, sues Defendants Martin Crotty, Harrison Macris, Bradley Werntz, Princeton Carbon Works Inc., a Florida corporation ("<u>Princeton Carbon Works</u>"), and Princeton CarbonWorks, Inc., a Delaware corporation ("<u>Princeton CarbonWorks DE</u>") (collectively, "<u>Defendants</u>"), and alleges as follows.

### Jurisdiction and Venue

1.    This is an action for declaratory relief, breach of contract, an accounting, breach of fiduciary duty, conspiracy to breach fiduciary duty, conversion, conspiracy to commit conversion, and inspection of corporate records. Mr. Daniels' claims arise from an agreement in which he received an 18.5% equity

interest in Princeton Carbon Works. The agreement was made "in recognition of Paul's past services and to induce Paul to continue his association with [Princeton Carbon Works]". The agreement was also based on the determination by Mr. Crotty, Mr. Macris and Mr. Werntz , that "it is in the best interest of [Princeton Carbon Works] and its shareholders that Paul, without additional consideration, at this time receive and be issued an 18.5% equity interest in [Princeton Carbon Works]." After Mr. Daniels took the company from struggling start up to the successful launch of a highly technical product for a discerning audience, Defendants engaged in a concerted effort to convert and deprive Mr. Daniels of his equity interest in Princeton Carbon Works and all its assets including its intellectual property and its good will by unlawful and tortious conduct and a freeze-out merger.

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The amount in controversy is based, in part, on the value of Mr. Daniels' 18.5% interest in Princeton Carbon Works conservatively valued at between twenty-five to forty-five million dollars based on a multiple-of-revenue valuation methodology appropriate to this company. The actual valuation of Princeton Carbon Works may be greater after Mr. Daniels' receives access to the financial records of the company.

3.     This Court possesses personal jurisdiction over the Defendants. Princeton Carbon Works is incorporated under the laws of Florida. Mr. Crotty, Mr. Macris, Mr. Werntz, and Princeton CarbonWorks DE operated, conducted, engaged in and carried on a business or business venture in this state, having an office or agency in this state; they committed a tortious act within this state and conspired with a citizen of this state to commit tortious acts within this state; and breached a contract in this state by failing to perform acts required by contract to be performed in this state.

4.     Venue is proper in this judicial district because one of the Defendants resides within this judicial district and a substantial part of the events and omissions giving rise to the claims occurred within this judicial district.

## The Parties

5.     Mr. Daniels is a citizen and resident of Pennsylvania.

6.     Mr. Crotty is a citizen and resident of New Jersey.

7.     Mr. Macris is a citizen and resident of Connecticut.

8.     Mr. Werntz is a citizen and resident of Rhode Island.

9.     Princeton Carbon Works is a Florida corporation which currently reports an inactive status on the Florida Division of Corporations Sunbiz.org website as a result of a merger in 2024 with Princeton CarbonWorks DE, a Delaware corporation. Princeton CarbonWorks DE currently lists its principal place of

business at the address of Mr. Macris in Connecticut.

## General Allegations

### *Princeton Carbon Works and its formation*

10.     Mr. Crotty formed Princeton Carbon Works in March 2015, serving as its president. He formed Princeton Carbon Works to develop and market high-performance bicycle wheels for both triathlon and time trial bikes used in the cycling sport.

11.     Mr. Crotty was soon joined by co-founders Bradley Werntz and Harrison Macris. The three had all been on their collegiate rowing teams – Mr. Crotty (class of 1998) and Mr. Werntz (class of 2010) at Princeton University and Mr. Macris (class of 2009) at Boston University. Mr. Crotty rowed for the U.S. Rowing Team and Mr. Werntz rowed for the U.S. Junior Rowing Team before he went to college.

12.     Mr. Crotty was a member of Princeton's 1998 championship rowing team and currently serves as a rowing coach at Princeton University. Mr. Crotty incorporated the Princeton University name, and by implication its reputation, into the business name of Princeton Carbon Works. Mr. Crotty often conducted and continues to conduct Princeton Carbon Works business from Princeton University's Shea Rowing Center and has regularly held business meetings there as well. Mr. Crotty's use of Princeton University facilities to operate Princeton Carbon Works in

the manner described below is <u>not</u> consistent with Princeton University traditions, standards, and requirements.

13.     Mr. Crotty's father-in-law, a lawyer based in Boca Raton, Florida, incorporated Princeton Carbon Works and serves as its registered agent.

*Mr. Daniels' background and his meeting Mr. Crotty*

14.     Mr. Daniels, also a collegiate rower, moved to Princeton, New Jersey in 2003 after his graduation from the University of Wisconsin with a Bachelor of Science degree. Mr. Daniels was a three-time Eastern Area Rowing Conference Champion from 2000 through 2002 at Wisconsin making the Athletic Dean's list. Mr. Daniels was also a five-time national team member of the U.S. Rowing Team with gold awards in the 2005 World Championships, 2003 Pan Am Games, 2002 U23 World Championships, and bronze awards in the 2006 and 2004 World Championships.

15.     Mr. Daniels met Mr. Crotty after his move to Princeton, New Jersey. At that time, Mr. Crotty was in the Princeton University rowing community coaching masters, juniors and eventually Princeton University's team. They became friends within the greater Princeton rowing community at weekly poker nights and through a shared interest in cycling, becoming the core of a group of rowers who also cycled. The rowers turned to cycling to break up training on the water and for cross-training in the off-season.

16.    Mr. Daniels grew up racing and repairing bicycles, ultimately developing a deep understanding of the mechanics of bicycle maintenance, equipment and parts engineering, technology and manufacturing. Upon Mr. Daniels' move to Princeton, he was hired as a mechanic at Jay's Cycles, the oldest family-owned bicycle store in Princeton and Central New Jersey. During his time in Princeton, Mr. Daniels helped maintain the bicycles Mr. Crotty used for racing and other competitive cycling events.

17.    Mr. Daniels subsequently left Princeton to study at the University of Oxford in Oxford, England. In 2006, he obtained a Master of Science, Nature, Society, and Environmental Policy degree from the university. While at Oxford, Mr. Daniels added to his rowing accomplishments winning championships in 2006 in the Boat Race OUBC First "Blue" Boat and in the Henley Royal Regatta Silver Goblets Cup.

18.    Mr. Daniels returned to Princeton, New Jersey and from 2006 to 2016 worked at Blenheim Capital Management, LLC, starting as an analyst. He then obtained a FINRA Series 3 license, becoming a trader in various commodities sectors executing market strategies. Mr. Daniels eventually became a portfolio manager managing discretionary portfolios through strategic risk positioning in base and precious materials, developing and executing trading strategies and overseeing positions valued at more than a billion dollars.

*Mr. Daniels' work with Princeton Carbon Works*

19.    In 2014, Mr. Crotty asked Mr. Daniels, as a bicycle expert, to accompany him and Mr. Macris to assist Mr. Crotty's presentation of a carbon bicycle wheel prototype to WinTech Racing, a rowing shell manufacturer.

20.    Mr. Crotty wrote Mr. Daniels:

> I would like to utilize your expertise in getting a hoop, spokes, hub constructed around the carbon fairing that we will have waiting for you. At the very least you'd become part of the conversation on how to get this done, and I see your input as potentially very valuable ... I see myself as a project manager and relationship guy. I think on one hand we are probably further along than you would think, on the other hand we are coming up woefully short on thinking the design aspects through.  You can determine yourself once you learn more.

21.    The Princeton Carbon Works prototype was of a low quality and significantly below the quality standards of the manufactured bicycle wheels currently available on the market. Mr. Daniels explained to Mr. Crotty and Mr. Macris his perspective on their prototype as well as the pricing landscape of the competitive bicycle wheel market.

22.    From early 2017 through April 2017, Mr. Daniels became, in effect, an unpaid consultant to Princeton Carbon Works assisting and guiding Mr. Crotty, Mr. Macris and Mr. Werntz as they re-engaged with their carbon bicycle wheel project.

23.    Mr. Daniels devoted his substantial talents and energies to achieve Princeton Carbon Works' goal of developing a flagship line of products for carbon, tubeless bicycle wheels for time trial and triathlon bicycles.

24.     In February 2017, Mr. Crotty wrote a potential investor in Princeton Carbon Works about Mr. Daniels:

> Most of all, we are thrilled to introduce Paul Daniels to you. As you most likely already know, Paul is a 2005 World Champion (US Men's 8+, Gifu), a 2003 Eastern Sprints Champion (Wisconsin), and an Oxford Blue (winner of Boat Race 2005).  Paul's impressive rowing history palls [sic] in comparison with his knowledge and passion for the bicycle industry.  We expect Paul to make an immediate impact on our day to day operations, and he will be able to fully implement our sales, marketing, and branding strategy.

25.     The potential investor's fund eventually purchased an equity position in Princeton Carbon Works providing it with critical capital. The investment was conditioned on Princeton Carbon Works hiring Mr. Daniels to manage Princeton Carbon Works' operations.

26.     Mr. Daniels applied his industry experience and expertise on behalf of Princeton Carbon Works by engaging their investor, analyzing industry trends for a successful product alignment, developing web space strategy, working on sales, marketing, wholesale relationship development, event attendance, and calendar scheduling. He defined the company goal of developing a flagship line of carbon, tubeless bicycle wheels.

27.     In addition to his academic and athletic accomplishments, Mr. Daniels contributed an additional skillset and reputation to Princeton Carbon Works from his having served as director of New York Athletic Club Elite Cycling Team from 2008 to 2012 and as a brand ambassador for InGamba, the premier luxury cycling travel

company, from 2012 to 2017.

28.     On February 13, 2017, Mr. Daniels proposed becoming the director of operations position at Princeton Carbon Works. In his email to Mr. Crotty, Mr. Daniels articulated the core of Princeton Carbon Works' business strategy:

> The home and focus of the flagship product is obviously TT and Tri, however even in that realm minor adaptations/purchase options could yield gains in market product relevance versus competitors:  tubeless ready / carbon core / disc hubset / depth options etc.
>
> In my opinion it's necessary to approach the - radically different aero section -  rim profile as the base for a product line, not a single product.
>
> Utilizing alternative/varying rim beds/cores as well as lacing patterns and hub options, a greatly expanded consumer base would be realized. Considering cycling trends, and market share of disposable $s for the riding community, minor alterations to tire builds would diversify market reach.
>
> Namely :
> Tubeless (CX / road)
> Disc / Through Axel (CX / gravel fondos)
> Track / Single Speed (Red Hook Crit Series)

29.     Mr. Daniels described a business plan for Princeton Carbon Works, outlined the contributions he could make to the company as director of operations and asked that his position be formalized.

30.     On April 10, 2017, Mr. Werntz sent Mr. Daniels a formal offer from Princeton Carbon Works for the position of Director of Business Development which Mr. Daniels accepted. The offer included 10% the outstanding common stock in the company subject to restrictions and a vesting schedule.  Mr. Daniels' assuming

responsibility for the daily operations of Princeton Carbon Work resulted in the first outside investment into the company.

31.    The contributions of Mr. Daniels to Princeton Carbon Works include his overseeing the successful product development of the Wake 6560 aero carbon road wheelset; developing the related quality control standardization; vetting and partnering with a sourcing agent; overhauling the company's supply chain; managing the tooling with a new manufacturer; developing the advertising, branding, and marketing of the Wake 6560 and its re-design; managing all customs and import issues; handling freight negotiation and order fulfillment; inventory management; athlete support and key partnership development. Mr. Daniels' work and his reputation and standing in both the rowing and bicycling community, together with his personal and professional network, were essential to Princeton Carbon Works being able to execute the launch of a highly technical product that included concepts and strategies necessary for a discerning audience.

32.    Princeton Carbon Works was well on its way into its sales growth plan with 2017 being a year of abundant growth and transition as Princeton Carbon Works moved from product design to sales, advertising, branding, marketing, patent research and related projects. Princeton Carbon Works had developed an awesome product that it had carefully positioned into a well-received product and a steady growth in revenue.

33.     In March 2018, Mr. Daniels personally provided bridge loan financing to Princeton Carbon Works, while the co-founders declined to contribute capital to its continued operations.

34.     After Mr. Daniels' first year of work at Princeton Carbon Works and his demonstrated accomplishments for and contributions to Princeton Carbon Works, Mr. Crotty, Mr. Werntz and Mr. Macris decided to substantially increase Mr. Daniels' equity position in the company. Messrs. Daniels, Crotty, Harrison, Werntz and Princeton Carbon Works signed a Memorandum of Agreement on May 10, 2018 bestowing on Mr. Daniels the status of co-founder of Princeton Carbon Works and immediately vesting and increasing his equity stake in the company ("Agreement"). A copy of the Agreement is attached as Exhibit "1",.

35.     The Agreement recitals state in part:

E.  Paul, as a consultant and part-time employee, has served as the Company's chief operating officer and made valuable contributions to the Company which Harrison, Brad and Martin recognize.

F.  Harrison, Brad and Martin are desirous of Paul continuing his association with the Company.

G.  Harrison, Brad and Martin have determined that in recognition of Paul's past services and to induce Paul to continue his association with the Company it is in the best interest of the Company and its shareholders that Paul, without additional consideration, at this time receive and be issued an 18.5% equity interest in the Company while maintaining Rowing Ventures' 10% equity interest.

36.     The operative provisions of the Agreement state:

1. The above Recitals are true and correct and are incorporated and made a part of this Agreement.

2. Harrison hereby agrees to and shall relinquish and surrender to the Company 3.75 of his shares in the Company for reissuance to Paul, with Harrison retaining 285 shares. Harrison shall concurrent with his execution of this Memorandum execute the attached stock power.

3. Martin hereby agrees to and shall relinquish and surrender to the Company 14.875 of his shares in the Company for reissuance to Paul, with Martin retaining 245 shares. Martin shall concurrent with his execution of this Memorandum execute the attached stock power.

4. Brad hereby agrees to and shall relinquish and surrender to the Company 36.375 of his shares in the Company for reissuance to Paul, with Brad retaining 185 shares. Brad shall concurrent with his execution of this Memorandum execute the attached stock power.

5. The Company shall promptly issue new stock certificates to Harrison for 285 shares, to Martin for 245 shares and to Brad for 185 shares.

6. The Company shall promptly issue to Paul 185 certificated shares of its common stock.

7. Paul represents and agrees that the issuance of 185 shares of the Company's common stock to him completes, satisfies and complies with his prior and contemporaneous oral discussions, representations, negotiations, arrangements and agreements with the other Parties with regard to Paul acquiring an equity interest in the Company and that all such prior and contemporaneous discussions, representations, negotiations, arrangements and agreements are merged into this Agreement.

8. Martin is authorized to enter into and sign this Agreement on behalf of the Company.

*Mr. Daniels' resignation from Princeton Carbon Works and his efforts to value and sell his equity stake in Princeton Carbon Works*

37.    In March 2019, Mr. Daniels resigned from Princeton Carbon Works effective April 15, 2019. After his resignation, Mr. Daniels sought to ascertain the value of his 18.5% interest in Princeton Carbon Works and expressed his interest in the sale of his equity in the company. Mr. Daniels wrote and spoke with Mr. Crotty and exchanged emails with him about the value and sale of his stake in the company. Mr. Crotty added Mr. Macris to the email chain.

38.    Mr. Crotty confirmed to Mr. Daniels in October 2020 that he received 185 shares, of a total of 1000 shares, for an 18.5% interest in Princeton Carbon Works and that the shares were fully vested and not restricted. While Mr. Crotty wrote Mr. Daniels that he was "happy to answer any other questions" he had, Mr. Crotty did not provide Mr. Daniels with any records of its sales or revenues or the certified December 2019 business valuation.

39.    Mr. Macris wrote Mr. Daniels later that month stating that Mr. Daniels' stock ownership was subject to a vesting schedule, contrary to Mr. Crotty's prior statement, and that he strongly disagreed with Mr. Daniels' "ability to sell or transfer [his] ownership, if any, in PCW to a buyer" without discussing the transaction with Princeton Carbon Works' board. Mr. Macris asserted that either Mr. Daniels did not

have an equity interest in Princeton Carbon Works or that any such interest was subject to restrictions, again contrary to Mr. Crotty's earlier statements.

40.     Mr. Daniels' subsequent efforts to ascertain the value of his equity stake in Princeton Carbon Works and to sell his interest were met by a series of statements by Mr. Crotty and Mr. Macris including statements that:

a.  Mr. Daniels' stake in Princeton Carbon Works had been diluted and was of nominal value;

b.  Mr. Daniels' 18.5% interest in Princeton Carbon Works that he received pursuant to the Agreement was subject to a vesting schedule from a prior and superseded agreement;

c.  Mr. Daniels' equity interest was restricted and required consultation with and approval of the company's board of directors before he could sell his interest;

d.  Princeton Carbon Works does not even know what interest Mr. Daniels had in the company;

e.  Mr. Daniels' interest in Princeton Carbon Works had been "diluted" from 18.5% to 1.85%;

f.  Mr. Daniels' interest in Princeton Carbon Works had been "fully diluted";

g.  Mr. Daniels' interest in Princeton Carbon Works had been diluted from 18.5% to 6.85% worth $173,000.00;

h.  Mr. Daniels should accept a $300,000.00 payment for his interest in a "blind sale", that is a sale by Mr. Daniels of his interest without him having any access to the corporate and financial records of Princeton Carbon Works that would allow him to ascertain his interest in the company and to verify the assertions of Mr. Crotty and Mr. Macris about his interest in the company; and

     i.  Mr. Daniels should accept Princeton Carbon Works' offer of a $647,000.00 payment for his interest in a "blind sale", again, a sale without Mr. Daniels having access to the corporate and financial records of the company that would allow him to ascertain the fair market value of his interest in the company and to verify the statements made by Mr. Crotty and Mr. Macris about his interest in the company.

41.    The statements by Mr. Crotty and Mr. Macris and offers of a payment to Mr. Daniels were coupled with a general refusal to provide Mr. Daniels with the documents he requested on numerous occasions about the finances of Princeton Carbon Works and documents about the supposed dilution of Mr. Daniels' shares, including his requests for shareholder agreements, records regarding its shareholders, outstanding shares and class of shares required by Chapter 607 of the Florida Statutes and the by-laws of the company.

42.    Princeton Carbon Works and Mr. Crotty refused formal requests for the corporate records made on behalf of Mr. Daniels on July 22, 2024, August 1, 2024, and August 9, 2024.

43.    At no time from Mr. Daniels' resignation from Princeton Carbon Works in March 2019 through July 2024, had Mr. Daniels received any notices from Princeton Carbon Works of shareholder or directors annual or special meetings or notices of corporate action or written consents describing any action taken by approving shareholders under either Chapter 607, Florida Statutes or the By-Laws

of Princeton Carbon Works.

44.     At or around the time of many of the statements by Mr. Crotty and Mr. Macris to Mr. Daniels, described above, regarding his equity interest, Princeton Carbon Works filed a Federal Rule of Civil Procedure 7.1 Certificate of Interest identifying Mr. Daniels as a shareholder of the company having "a financial interest in the outcome" of a case pending in this Court as *SRAM, LLC v. Princeton Carbon Works Inc.*, Case No. 9:21-cv-80581 RKA (S.D. Fla.) [ECF No. 19].

45.     In that same civil action, plaintiff's counsel filed a declaration attaching a "document entitled 'PCW-Pitch-Deck.pdf' and available on June 3, 2021" on the internet identifying Mr. Daniels as one of the founders of Princeton Carbon Works [ECF No. 28-1 and 28-13].

46.     On June 21, 2024, Princeton Carbon Works filed articles of merger with the Florida Secretary of State Division of Corporations. The articles identified Princeton Carbon Works as the merging entity and Princeton CarbonWorks DE as the surviving entity.

47.     On June 21, 2024, Mr. Crotty, Mr. Macris and Mr. Werntz, in their capacity as shareholders of Princeton Carbon Works and members of its Board of Directors, unanimously voted to enter into an Agreement and Plan of Merger with PCW Holdco, Inc., a Delaware corporation as the Parent. The online records of the Delaware Division of Corporations do not report the existence of an entity by the

name of PCW Holdco, Inc. The Agreement and Plan of Merger states that immediately following the merger, the name of the surviving corporation shall be Princeton CarbonWorks DE, and the separate existence of Princeton Carbon Works shall cease and be merged into the parent.

48. On or about June 21, 2024, Princeton Carbon Works provided Mr. Daniels documentation regarding the merger and notice of appraisal rights of his interest pursuant to sections 607.1301 through 607.1340, Florida Statutes.

49. On August 21, 2024, Mr. Daniels gave formal notice of his withdrawal from Princeton Carbon Works appraisal process to assert his rights under section 607.1304, Florida Statutes. Mr. Daniels withdrew from the process because the contemplated corporate action was not authorized and approved in accordance with the applicable provisions of chapter 607, and was procured as a result of fraud, a material misrepresentations, and omissions of material facts necessary to make statements made, in light of the circumstances in which they were made, not misleading. The entire merger was intended and designed by Defendants as a freeze-out merger to unfairly eliminate Mr. Daniels' interest in Princeton Carbon Works at a fraction of its actual value, convert all of the assets of Princeton Carbon Works, including its good will, and was in complete disregard of their fiduciary duties of disclosure, good faith and fair dealing.

50. All conditions precedent to this action have occurred, have been

performed, or have otherwise been waived.

**Count I – Action for declaratory relief**
**(Against all Defendants)**

51.    Mr. Daniels repeats the allegations in paragraphs 1 – 50.

52.    There exists a justiciable and actual controversy and dispute between Mr. Daniels and Defendants regarding Mr. Daniels' interest in Princeton Carbon Works, Princeton CarbonWorks DE; the purported merger between the two entities; and the legal rights and obligations of those entities and of Mr. Crotty, Mr. Macris, Mr. Werntz, and Princeton Carbon Works to Mr. Daniels.

53.    Mr. Daniels seeks a declaration and further relief regarding:

a.    The extent and present fair market value of his interest in Princeton Carbon Works and Princeton CarbonWorks DE and his ability to sell his interest to a third party;

b.    Whether the merger between Princeton Carbon Works and Princeton CarbonWorks DE was procured as a result of fraud, material misrepresentation, or an omission of a material fact necessary to make statements made, in light of the circumstances in which they were made, not misleading, and Mr. Daniels' rights and duties regarding the merger and his valuation rights as a shareholder who did not vote on the merger plan;

c.    Whether the actions and omissions of Mr. Crotty, Mr. Macris and

18

Mr. Werntz were in breach of their fiduciary duty to Mr. Daniels; and

d.  All other rights and other legal relations of Mr. Daniels' with Mr. Crotty, Mr. Macris and Mr. Werntz, Princeton Carbon Works and Princeton CarbonWorks DE.

54.    Mr. Daniels seeks further necessary and proper relief based on the declaratory judgment, after reasonable notice and hearing, against any adverse party whose rights have been determined by the judgment in the form of damages and preliminary and permanent injunctive relief for irreparable damages suffered by Mr. Daniels for which there is not an adequate remedy at law.

WHEREFORE, Plaintiff, Paul Daniels, request entry of a declaratory judgment against Defendants, jointly and severally, declaring his rights and the legal obligations of the parties and a judgment for other relief including for Mr. Daniels' direct and consequential damages, prejudgment interest, preliminary and permanent injunctive relief, costs and such further relief that is just and appropriate.

**Count II – Breach of contract**
**(Against Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works)**

55.    Mr. Daniels repeats the allegations in paragraphs 1 – 50.

56.    Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works breached the Agreement by failing to recognize and comply with its provisions regarding Mr. Daniels' unrestricted and fully vested ownership of 18.5% of

Princeton Carbon Works.

57.     Their breach of the Agreement directly caused damages to Mr. Daniels entitling him to a judgment against Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works for his damages.

WHEREFORE, Plaintiff, Paul Daniels, requests entry of judgment against Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works for his direct and consequential damages, prejudgment interest, costs and such further relief that is just and appropriate.

### Count III – Breach of implied covenants of good faith and fair dealing
### (Against Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works)

58.     Mr. Daniels repeats the allegations in paragraphs 1 – 50.

59.     Under the Agreement, Mr. Crotty, Mr. Macris, Mr. Werntz are required to perform certain obligations. The Agreement contains an implied covenant of good faith and fair dealing related to those obligations.

60.     Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works breached the implied covenant of good faith and fair dealing by, among other things, their refusal to recognize Mr. Daniels' 18.5% unrestricted and fully vested interest in Princeton Carbon Works; their false statements about Mr. Daniels' interest in the company; their refusal to permit Mr. Daniels access to corporate records and financial information of Princeton Carbon Works; and their unanimous efforts to convert Mr. Daniels interest for themselves without compensation Mr. Daniels and

the assets of Princeton Carbon Works through the device of a freeze-out merger.

WHEREFORE, Plaintiff, Paul Daniels, requests entry of judgment against Defendants for his direct and consequential damages, prejudgment interest, costs and such further relief that is just and appropriate.

**Count IV – Action for breach of fiduciary duty**
**(Against Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works)**

61.    Mr. Daniels repeats the allegations in paragraphs 1 – 50, 56 and 60.

62.    Mr. Crotty, Mr. Macris, Mr. Werntz, as directors of Princeton Carbon Works, all owed a fiduciary duty to Mr. Daniels as a shareholder owning 18.5% of the company. Princeton Carbon Works also owed a fiduciary duty to its shareholders.

63.    Mr. Crotty, Mr. Macris, Mr. Werntz and Princeton Carbon Works breached their fiduciary duty to Mr. Daniels causing him damages and entitling him to a judgment against them.

WHEREFORE, Plaintiff, Paul Daniels, requests entry of judgment against Defendants Crotty, Macris, Werntz and Princeton Carbon Works, jointly and severally, for Mr. Daniels' direct and consequential damages, prejudgment interest, punitive damages, costs and such further relief that is just and appropriate.

**Count V – Conspiracy to commit breach of fiduciary duty**
**(Against all Defendants)**

64.    Mr. Daniels repeats the allegations in paragraphs 1 – 50, 56 and 60.

21

65.     Mr. Crotty, Mr. Macris, Mr. Werntz, Princeton Carbon Works and Princeton CarbonWorks DE all conspired among themselves to, among other things, effect a freeze-out merger to deprive Mr. Daniels of his interest in Princeton Carbon Works by eliminating the company to force Mr. Daniels to accept a value for a reduced equity interest in Princeton Carbon Works that was substantially less than the fair market value of his full interest in that company.

66.     Mr. Crotty, Mr. Macris and Mr. Werntz had a personal stake in the activity because reducing or eliminating Mr. Daniels' equity stake in Princeton Carbon Works for a reduced payment, or no payment at all to him, would increase the size and value of their personal equity interest in the company.

67.     The Defendants conspired among themselves by, among other things, working in concert to make false statements to Mr. Daniels about the extent of his interest in Princeton Carbon Works and to question even the existence of an interest in Princeton Carbon Works; denying Mr. Daniels access to corporate and financial records of Princeton Carbon Works to which he was entitled as a shareholder; and by making false statement to Mr. Daniels about the true value of Princeton Carbon Works.

WHEREFORE, Plaintiff, Paul Daniels, requests entry of judgment against Defendants, jointly and severally, for his direct and consequential damages, prejudgment interest, punitive damages, attorneys' fees and costs and such further

relief that is just and appropriate.

## Count VI – Action for Conversion
### (Against all Defendants)

68.    Mr. Daniels repeats the allegations in paragraphs 1 – 50, 56 and 60.

69.    Mr. Daniels owns an 18.5% interest in Princeton Carbon Works pursuant to the Agreement with Mr. Crotty, Mr. Macris, Mr. Werntz, and Princeton Carbon Works.

70.    Defendants wrongfully deprived Mr. Daniels of his interest in Princeton Carbon Works and has refused to return his interest to him despite the repeated demands of Mr. Daniels, entitling Mr. Daniels to a judgment against all Defendants, jointly and severally.

WHEREFORE, Plaintiff, Paul Daniels, requests entry of judgment against Defendants, jointly and severally, for his direct and consequential damages, prejudgment interest, punitive damages, attorneys' fees and costs and such further relief that is just and appropriate.

## Count VII – Conspiracy to commit breach of fiduciary duty
### (Against all Defendants)

71.    Mr. Daniels repeats the allegations in paragraphs 1 – 50, 56 and 60.

72.    Mr. Crotty, Mr. Macris, Mr. Werntz, Princeton Carbon Works and Princeton CarbonWorks DE all conspired among themselves to, among other things, convert Princeton Carbon Works' assets by unanimously effecting a freeze-out

merger that would also deprive Mr. Daniels of his interest in Princeton Carbon Works or force him to accept a reduced value for his equity interest in Princeton Carbon Works that was substantially less than the fair market value of his full interest in that company.

73.    Mr. Crotty, Mr. Macris and Mr. Werntz had a personal stake in the activity because by reducing or eliminating Mr. Daniels' equity stake in Princeton Carbon Works for a reduced payment or no payment at all would increase the size and value of their personal equity interest in the company.

WHEREFORE, Plaintiff, Paul Daniels, requests entry of judgment against Defendants, jointly and severally, for his direct and consequential damages, prejudgment interest, punitive damages, attorneys' fees and costs and such further relief that is just and appropriate.

### Count VIII – Action for accounting
### (Against Princeton Carbon Works)

74.    Mr. Daniels repeats the allegations in paragraphs 1 – 50, 56 and 60.

75.    Mr. Daniels owns 18.5% of Princeton Carbon Works pursuant to the Agreement. The Defendants have disputed the extent of his interest and whether his interest even exists. They have sought to deprive and reduce the extent of his interest through the implantation of a freeze-out merger with Princeton CarbonWorks DE acquiring the assets and goodwill of Princeton Carbon Works, in an action designed to reduce or eliminate Mr. Daniels' interest in Princeton Carbon Works.

76.     Mr. Crotty and Mr. Macris have also refused Mr. Daniels' access to the records and information of Princeton Carbon Works.

77.     Based on the fiduciary duty that exists between Mr. Crotty, Mr. Macris, Mr. Werntz, Princeton Carbon Works and Mr. Daniels and the inadequacy of a remedy at law, Mr. Daniels is entitled to an equitable accounting from Defendants.

WHEREFORE, Plaintiff, Paul Daniels, requests a determination that Mr. Daniels is entitled to an equitable accounting followed by a full and complete accounting in accordance with the determination, costs and such further relief that is just and appropriate.

### Count IX – Action for inspection of corporate records
### (Against Princeton Carbon Works and Princeton Carbon Works DE)

78.     Mr. Daniels repeats the allegations in paragraphs 1 – 50.

79.     Mr. Crotty, Mr. Macris, Mr. Werntz, Princeton Carbon Works and Princeton CarbonWorks DE have wrongfully denied Mr. Daniels' access to the corporate and financial records of Princeton Carbon Works, entitling Mr. Daniels to a judgment against Defendants.

WHEREFORE, Plaintiff Paul Daniels requests entry of judgment against Defendants, jointly and severally, for his direct and consequential damages, prejudgment interest and costs and such further relief that is just and appropriate.

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: January 9, 2025

Respectfully submitted,

WEISSMAN & DERVISHI, P.A.

By:   /s/ Brian S. Dervishi
       Brian S. Dervishi
       Luke T. Jacobs
       Victoria Max
Fla. Bar Nos. 350303, 1024787 and 1059815
One SE Third Avenue, Suite 1700
Miami, Florida 33131
305-347-4070 (Telephone)
bdervishi@wdpalaw.com
ljacobs@wdpalaw.com
vmax@wdpalaw.com
service@wdpalaw.com

Attorneys for Plaintiff Paul Daniels